**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | |
|---|---|
| MAINSTREET BANK,<br>             Plaintiff,<br><br>          v.<br><br>NATIONAL EXCAVATING<br>CORPORATION, *et al.*,<br>             Defendants. | Civil Action No. 10-cv-02116-AW |

**<u>MEMORANDUM OPINION</u>**

Pending before the Court are Plaintiff's Motion for Entry of Default against several Defendants, Doc. No. 12, and Defendants' Motion to Dismiss / Transfer, Doc. No. 11. As explained further below, the Court will GRANT IN PART and DENY IN PART the Motion to Dismiss / Transfer, with the result that the case will not be dismissed but will be transferred to the Eastern District of Virginia. The Court will leave the Motion for Default pending so that the transferee Court can resolve that issue as it sees fit. Thus, the remainder of this Opinion will only deal with the Motion to Dismiss / Transfer.

## I.      FACTUAL & PROCEDURAL BACKGROUND

Plaintiff MainStreet Bank ("MainStreet") has its headquarters and principal place of business in Virginia. The Defendants are Maryland-based entities with the exception of Defendant Smith, who is a Louisiana resident connected to Maryland by virtue of his position as Trustee of Defendant National Excavating Corporation Employee Stock Ownership Trust ("ESOP"). MainStreet and Defendant National Excavating Corporation ("NEC") were parties to a leveraged employee buyout of Defendant William Finagin's ("Finagin") 100% ownership

interest in NEC. The plan was structured so that MainStreet would lend NEC $3,000,000, which in turn would be paid to ESOP. ESOP would then use the loan money to pay Finagin a lump sum to buy out his shares, and then use the value of its ownership in the company to pay back the loan. Closing on the loan took place on June 24, 2009 in MainStreet's office in Virginia.

The loan was documented in a commercial note ("Note") and secured by a Secured Credit Agreement and Security Agreement ("Agreement") granting MainStreet rights in NEC's collateral. The Note contains a forum-selection clause, drafted by MainStreet, stating that the Borrower "submit[s] to the exclusive jurisdiction of any Virginia state court or federal court sitting in the Commonwealth of Virginia with respect to any suit, action, or proceeding relating to this Note." Doc. No. 11-3, Ex. 2, at 5. The forum-selection clause contained in the Note specifically exempts the Bank, stating that "[n]othing in this paragraph shall affect the Bank's right to serve process in any other manner permitted by law . . . in any other court having jurisdiction." *Id.* However, the forum-selection clause in the Agreement binds both the Borrower and the Bank, and it states that "[a]ny legal action or proceeding with respect to this Credit Agreement, the Note, any Collateral Document or any of the transactions contemplated hereby or thereby shall be brought in the courts of the Commonwealth of Virginia or of the United States of America for the Eastern District of Virginia, and no other courts." Doc. No. 11-2, Ex. 1, § 6.8.

MainStreet alleges that it entered into the transaction based on representations that NEC's financials were positive for several years prior, and based on the understanding that Finagin would combine NWC and NEC and/or transfer NWC's assets to NEC. Finagin sold NWC's assets to NEC for more than their true value, and he also withdrew and depleted the funds in several NEC bank accounts, partially by drafting checks from NEC to himself. MainStreet

alleges that these actions were taken in order to fraudulently diminish NEC's ability to repay the loan and enable Finagin to walk away with a windfall.

MainStreet sought and received a confession of judgment against NEC in the Circuit Court for Fairfax County, Virginia. Much of that judgment remains unpaid, and MainStreet now brings the present action before this Court. Defendants Finagin and NWC filed a Motion to Dismiss for Improper Venue, Doc. No. 11, although through the arguments of the Parties, the motion appears to have evolved into a Motion to Transfer Venue to the United States District Court for the Eastern District of Virginia, *see* Doc. Nos. 14, 16.

## II.    STANDARD OF REVIEW

When a court considers which of two federal district courts ought to handle a case, the appropriate remedy is transfer, not dismissal. *See BHP Intern. Inv., Inc. v. OnLine Exch., Inc.* 105 F. Supp. 2d 493, 497 (E.D. Va. 2000) (collecting cases) ("[C]ourts within the Fourth Circuit have almost uniformly held that a motion to dismiss for improper venue is not the correct procedural vehicle for enforcing a forum selection clause when transfer is proper.").[1]

The transfer analysis proceeds in two steps. First, the non-moving Party must show that venue is proper in the current District, and the movant must show that venue is proper in the transferee District. *See Bartholomew v. Va. Chiropractors Ass'n, Inc.*, 612 F.2d 812, 816 (4th Cir. 1979) ("[T]he burden is upon plaintiff to establish venue and jurisdiction . . . ."), *cert. denied*, 446 U.S. 938 (1980), *overruled on other grounds by Ratino v. Med. Serv. of D.C. (Blue Shield)*, 718 F.2d 1260, 1265-67 (4th Cir. 1983). The propriety of venue "rests only upon

---

[1] The Defendants' initial confusion on this point results from their reliance on cases such as *Sucampo Pharm., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544 (4th Cir. 2006), where a forum-selection clause required the case to be filed in a state or foreign jurisdiction. In those situations, dismissal is the appropriate remedy; but the inquiry should focus on transfer where, as here, both the court currently handling the case and the court designated in the forum-selection clause are federal district courts.

whether an action satisfies the federal venue statutes, not upon the provisions of the litigants' private contractual agreements." *BHP*, 105 F. Supp. 2d at 497 (collecting cases).

The applicable statute is 28 U.S.C. § 1391(a), which states that venue is proper in: "(1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought."

Second, if venue is proper in both the current District and the transferee District, the Court must consider whether transfer is justified "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). An applicable forum-selection clause "will be a significant factor that figures centrally in the district court's calculus," because convenience to the Parties and other section 1404(a) factors must be judged in light of "the parties' expressed preference for that venue." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). Nonetheless, a forum-selection clause is not necessarily dispositive, and the transfer decision is discretionary and is ultimately based on "'individualized, case-by-case consideration of convenience and fairness.'" *Id.* (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)); *see also Choice Hotels Intern., Inc. v. Madison Three, Inc.*, 23 F. Supp. 2d 617, 622 n.4 (D. Md. 1998) (listing 11 factors courts typically consider under section 1404(a)).[2]

III.     ANALYSIS

---

[2] "Those factors include: (1) the plaintiff's initial choice of forum; (2) relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing and unwilling witnesses; (4) possibility of a view of the premises, if appropriate; (5) enforceability of a judgment, if one is obtained; (6) relative advantage and obstacles to a fair trial; (7) other practical problems that make a trial easy, expeditious, and inexpensive; (8) administrative difficulties of court congestion; (9) local interest in having localized controversies settled at home; (10) appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) avoidance of unnecessary problems with conflicts of laws." *Choice Hotels*, 23 F. Supp. 2d at 622 n.4.

Although Defendants' Motion was initially framed as a motion to dismiss for improper venue, it is now clear that the real dispute centers on section 1404(a) (discretionary transfer), not section 1391(a) (proper venue). Plaintiff argues that venue is proper under section 1391(a) because a "substantial part" of the fraudulent transactions among the Defendants (*i.e.*, between Finagin and NEC, and between NWC and NEC) occurred in Maryland. Defendants never contest this analysis and do not argue improper venue in their Reply brief, so the Court holds that venue is proper in this District.

Both Parties agree that venue would also be proper in the United States District Court for the Eastern District of Virginia. A "substantial part" of the underlying facts giving rise to Plaintiff's claims occurred in Virginia, § 1391(a), specifically, the closing on the loan and any representations made to MainStreet, which has its headquarters and principal place of business in Fairfax County, Virginia. Because venue would be proper both in either court, this Court must decide under section 1404(a) whether the case ought to remain here or be transferred to the Eastern District of Virginia.

Plaintiff raises several arguments in favor of keeping the case in Maryland: (1) Maryland is the forum where Plaintiff chose to bring its case, (2) remaining in this District would avoid personal-jurisdiction disputes relating to two of the Defendants who are currently in default,[3] (3) most of the Defendants are located in Maryland, making access to witnesses and documents easier in this District, (4) a judgment will be easier to enforce against Defendants in Maryland, which is the home state of most of them, and (5) Plaintiff argues that the transactions that are most factually significant to the case—the fraudulent transfers among the various Maryland-

---

[3] MainStreet argues that although the Eastern District of Virginia would probably have personal jurisdiction over those Defendants, the issue would be more open to dispute than it would be in Maryland.

based Defendants—occurred in Maryland, and therefore that Maryland law will govern the dispute.

Defendants raise essentially two arguments in favor of the Eastern District of Virginia: (1) the applicable forum-selection clause contained in the Security Agreement lists Virginia as the exclusive venue for cases relating to the loan transaction, and (2) the most significant facts relating to Plaintiff's claims involve the loan transaction and the closing on that transaction, which occurred in Virginia.

Apart from the forum-selection clause, the Parties have not presented any convincing reasons why the case belongs in one District or the other. First, the distance between Greenbelt and the Eastern District of Virginia is short, so witnesses and documents will not be much affected by choice of forum. Second, the Parties agree that the applicable tort law of Maryland and Virginia contain no material differences, and even if their legal standards were different, both the Maryland and Virginia District Courts are fully capable of applying the laws of neighboring states. Third, a judgment received by Plaintiff in Virginia federal court would be easy to enforce in Maryland, and Plaintiff has not articulated any unique obstacles to enforcement that it anticipates in this case. Fourth, Plaintiff has expressed confidence that it could establish personal jurisdiction over all Defendants in the Eastern District of Virginia and, and it has not provided a sufficient explanation for why it anticipates that personal jurisdiction may become a problem in the case.

The only convincing reason for the Court to prefer one jurisdiction over another in this case is the forum-selection clause contained in the Agreement, drafted by Plaintiff, which states that "[a]ny legal action or proceeding with respect to this Credit Agreement, the Note, any

Collateral Document or any of the transactions contemplated hereby or thereby shall be brought in the courts of the Commonwealth of Virginia or of the United States of America for the Eastern District of Virginia, and no other courts." Doc. No. 11-2, Ex. 1, § 6.8. Plaintiff responds by arguing that: (1) the moving Defendants lack standing to enforce the Agreement, as they are not parties to the Agreement or intended beneficiaries, and (2) the forum-selection clause does not apply, because the Complaint deals with fraudulent transactions among the Defendants that are separate from the loan transaction between NEC and MainStreet.

The Court is not convinced by either of Plaintiff's arguments against applying the forum-selection clause. First, at the time of the loan closing, Finagin was the 100% owner of NEC (the borrowing party under the contract) and NWC, and his transactions with NEC and NWC are central to Plaintiff's fraud claims. This Court has held that "all participants, parties, and non-parties are covered by choice of forum clauses so long as their alleged conduct is 'closely related' to the contract in question," *Belfiore v. Summit Fed. Credit Union*, 452 F. Supp. 2d 629, 633 (D. Md. 2006) (quoting *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993)), and there is no disputing that Finagin is closely related to NEC.[4] Thus, Finagin has standing to enforce the forum-selection clause.

Second, Plaintiff's claims are sufficiently related to the loan transaction to be governed by the forum-selection clause. The clause applies not only to breach of contract actions, but to legal actions relating to "any of the transactions contemplated" by the loan. Doc. No. 11-2, Ex. 1, § 6.8. Some of the allegedly fraudulent representations discussed in the Complaint are drawn directly from the Security Agreement, *i.e.*, the same document that contains the forum-selection

---

[4] Plaintiff's attempt to argue that entities closely related to contract parties are bound by, but cannot enforce, forum-selection clauses is unconvincing and unfair. The better rule, and the rule we adopt, would reciprocally impose both the benefit and the burden of a forum-selection clause.

clause. *See* Compl. ¶ 31. Furthermore, the reason Plaintiff was damaged by Defendants' alleged misrepresentations is that it was induced by those representations to enter into the loan transaction. Thus, Plaintiff's claims are covered by the forum-selection clause, and Plaintiff has not provided any convincing countervailing factors in favor of keeping the case in Maryland. The Court will accordingly grant Defendants' request to transfer this case to the United States District Court for the Eastern District of Virginia.

## IV.     CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss / Transfer is GRANTED IN PART and DENIED IN PART, and the Court will not issue a ruling on Plaintiff's Motion for Entry of Default. A separate Order will follow.


   October 28, 2010                                  /s/                 
        Date                                           Alexander Williams, Jr.
                                                  United States District Judge